UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LYNN JOSEPH TWO EAGLE, | ) | CIV. 10-5035-JLV |
| | ) | |
| Petitioner, | ) | ORDER OF DISMISSAL |
| | ) | |
| vs. | ) | |
| | ) | |
| DOUGLAS WEBER, Warden, | ) | |
| South Dakota State Penitentiary, | ) | |
| | ) | |
| Respondent. | ) | |

**PROCEDURAL HISTORY**

Petitioner Lynn Joseph Two Eagle, a prisoner at the South Dakota State Penitentiary, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Docket 1).  Respondent Douglas Weber moved to dismiss the petition with prejudice based on claims Mr. Two Eagle procedurally defaulted in state court and failed to show either "cause and prejudice" or "a fundamental miscarriage of justice."  (Docket 8).  The court referred all motions to Magistrate Judge Veronica L. Duffy for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket 5).

On March 15, 2011, Magistrate Judge Duffy filed a report and recommendation concluding the court should (1) grant respondent's motion to dismiss Mr. Two Eagle's petition; (2) deny Mr. Two Eagle's request for an independent psychiatric evaluation; and (3) deny Mr. Two Eagle's request for an evidentiary hearing.  Id. at pp. 35-36.  Mr. Two Eagle timely filed objections. (Docket 35).

The court reviews *de novo* those portions of the report and recommendation which are the subject of objections.  Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1).  The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  For the reasons stated below, Mr. Two Eagle's objections are overruled and the report and recommendation of the magistrate judge is adopted in its entirety.

## DISCUSSION

**A.    MAGISTRATE JUDGE'S FINDINGS OF FACT**

Mr. Two Eagle did not object to the magistrate judge's findings of fact. See Docket 35.  The magistrate judge's findings of fact are adopted by the court in accordance with 28 U.S.C. § 636(b)(1)(C).

**B.    MAGISTRATE JUDGE'S CONCLUSIONS OF LAW**

Mr. Two Eagles' objections to the magistrate judge's conclusions of law and recommendations are summarized as follows:

1.    The evidence conclusively demonstrates Mr. Two Eagle suffered from a mental illness or defect which substantially affected his capacity to appreciate his position or make rational choices concerning his case.

2.    A comprehensive psychiatric evaluation would likely assist the court in determining whether Mr. Two Eagle was incompetent during the relevant time period.

3.    An evidentiary hearing would give the court a fuller understanding of Mr. Two Eagle's mental state during the relevant time period.

(Docket 35).  Each of these objections will be addressed separately.

    **1.**    **THE EVIDENCE CONCLUSIVELY DEMONSTRATES MR. TWO EAGLE SUFFERED FROM A MENTAL ILLNESS OR DEFECT WHICH SUBSTANTIALLY AFFECTED HIS CAPACITY TO APPRECIATE HIS POSITION OR MAKE RATIONAL CHOICES CONCERNING HIS CASE.**

On January 6, 2006, Mr. Two Eagle pled guilty but mentally ill to attempted first degree robbery in Seventh Judicial Circuit Court, Pennington County, South Dakota.  (Docket 33 at p. 3).  On February 6, 2006, the trial court sentenced Mr. Two Eagle to 12 ½ years in the South Dakota State Penitentiary, with 3 ½  years suspended on certain conditions.  Id.[1]  Mr. Two Eagle, *pro se*, filed a notice of appeal to the South Dakota Supreme Court on March 16, 2006.  Id.  On March 31, 2008, the South Dakota Supreme Court affirmed his conviction.  Id. at p. 4.  There was no further review before the state supreme court or by the United States Supreme Court.  Id.

Mr. Two Eagle filed a number of *pro se* petitions seeking habeas relief with the Pennington County Circuit Court.  Id.  On June 27, 2008, the state habeas court issued a memorandum decision, findings of fact, and conclusions of law denying habeas relief.  Id.  A second memorandum decision and order denying relief was filed by the state habeas court on April 9, 2009.  Id.  With

---

[1]Mr. Two Eagle is currently in state custody following a parole violation. His projected release date is March 14, 2014.  (Docket 36).

the assistance of counsel,[2] a third state habeas petition was filed on February 10, 2010.  Id.

On February 24, 2010, the state habeas court dismissed the third petition with prejudice and declined to issue a certificate of probable cause.  Id. at p. 5.  Mr. Two Eagle did not apply to the South Dakota Supreme Court for issuance of a certificate of probable cause.  Id. at pp. 5-6.

An application to the South Dakota Supreme Court for issuance of a certificate of appealability is governed by SDCL § 21-27-18.1.  This statute provides, in part, the following:

> A final judgment or order entered under this chapter may not be reviewed by the Supreme Court of this state on appeal unless the circuit judge who renders the judgment or a justice of the Supreme Court issues a certificate of probable cause that an appealable issue exists. . . . The . . . refusal to issue a certificate of probable cause is not appealable.  However, a party may, upon the circuit court judge's refusal to issue a certificate of probable cause, file a separate motion for issuance of a certificate of probable cause with the Supreme Court within twenty days of the entry of the circuit judge's refusal.

Id.

On May 17, 2010, Mr. Two Eagle, again with the assistance of Attorney Murphy, filed a petition seeking federal habeas relief in this court.  (Docket 33 at p. 6; see also Docket 1).  The federal petition raised two constitutional grounds for relief.   Those claims are summarized as:

---

[2]Attorney John Murphy submitted an affidavit in support of Mr. Two Eagle's federal habeas.  See Docket 28-1.

4

1.    Because he was mentally incompetent at the time of his plea, Mr. Two Eagle was denied due process when the court accepted his guilty but mentally ill plea; and

2.    Mr. Two Eagle was denied due process at his change of plea hearing because the court failed to advise him of his constitutional rights, the nature of the charge against him, and the essential elements of the offense, and did not determine whether a factual basis for the plea existed or whether the plea was voluntary.

(Docket 33 at p. 6; see also Docket 1 at pp. 6 & 8).

On July 21, 2010, respondent Weber filed a motion to dismiss the petition because Mr. Two Eagle procedurally defaulted on these federal constitutional claims in the state habeas court.  (Dockets 8 & 33 at p. 6). Procedural default occurs when a petitioner fails to meet the deadline for an appeal from the state habeas court's denial of post-conviction relief.  See Stanley v. Lockhart, 941 F.2d 707, 709 (8th Cir. 1991) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.")). Respondent asserts procedural default occurred because Mr. Two Eagle failed to exhaust his state habeas court remedies prior to filing the federal habeas

5

petition and he cannot show sufficient cause for failing to request a certificate of probable cause from the South Dakota Supreme Court.  (Docket 33 at p. 6).

Magistrate Judge Duffy found Mr. Two Eagle failed to exhaust his state habeas remedies, but then concluded there was no presently available state habeas remedy available.  Id. at p. 7.  The magistrate judge concluded Mr. Two Eagle procedurally defaulted in state court because he failed to seek discretionary review from the South Dakota Supreme Court for issuance of a certificate of appealability between March 18, 2010, and April 7, 2010.  Id.

Mr. Two Eagle argues his petition for federal habeas relief should not be dismissed because he was mentally incompetent during the relevant time period and this constitutes sufficient cause to excuse procedural default.[3]  Id. The relevant time period was between March 18, 2010, and April 7, 2010, the twenty days within which Mr. Two Eagle could have applied to the South Dakota Supreme Court for a certificate of appealability from the state habeas court's denial of the third state habeas petition.  Id. at p. 7.

"[P]rocedural default may be excused and the petition reviewed if a petitioner can prove cause and prejudice for the default . . . ."  Holt v. Bowersox, 191 F.3d 970, 974 (8th Cir. 1999).  "Mental illness prejudices a

---

[3]Attorney Michael J. Simpson was appointed to represent Mr. Two Eagle for his response to respondent's motion to dismiss and the magistrate judge's order to show cause why the petition should not be dismissed.  (Docket 18, p. 20).

6

petitioner if it interferes with or impedes his . . . ability to comply with state procedural requirements, such as pursuing post-conviction relief within a specific time period."  Id.  "[A petitioner] is not competent to waive post-conviction remedies if he . . . is 'suffering from a mental disease, disorder, or defect that may substantially affect his . . . capacity to appreciate his . . . position and make a rational choice with respect to continuing or abandoning further litigation.' "  Id. (citing Anderson v. White, 32 F.3d 320, 321 (8th Cir. 1994)).  "The standard . . . limits the inquiry into petitioner's mental competency to the time period during which he should have pursued post-conviction relief."  Id. at 974-75.

     "A conclusive showing of incompetence is required before mental illness can constitute cause."[4]  Nachtigall v. Class, 48 F.3d 1076, 1081 (8th Cir. 1995) (referencing Stanley v. Lockhart, 941 F.2d 707, 709 (8th Cir. 1991).  "Mental illness and legal incompetence are not identical, nor are all mentally ill people legally incompetent."  Id. at 1081.

     During the critical time period March 18, 2010, to April 7, 2010, Mr. Two Eagle's correspondence and medical records are enlightening.  From the

---

[4]"Conclusive evidence," sometimes termed "conclusive proof," is "evidence so strong as to overbear any other evidence to the contrary."  Black's Law Dictionary 636 (9th ed. 2009).  It is also defined as "[e]vidence that so preponderates as to oblige a fact-finder to come to a certain conclusion."  Id.

submitted records, it appears Mr. Two Eagle was prescribed the following

medications:

> Venlafaxine - an antidepressant used to treat major depressive
> disorders, anxiety disorders and panic disorders;
>
> Captopril - prescribed to treat high blood pressure;
>
> Norvasc - prescribed to treat high blood pressure and coronary
> artery disease;
>
> Hydrohclorothiazide - prescribed to treat high blood pressure; and
>
> Prilosec - used to treat frequent heartburn.

See Dockets 28-2 at p. 8 & 33 at p. 15.

On March 12, 2010, Mr. Two Eagle prepared a handwritten letter to

Attorney Murphy.  (Docket 28-2 at pp. 10-12).  The letter provides significant

insight into Mr. Two Eagle's thought process and ability to "appreciate his . . .

position and make a rational choice with respect to continuing or abandoning

further litigation."  Holt, 191 F.3d at 974 (internal citation omitted).  Mr. Two

Eagle's letter[5] reads as follows:

> John Murphy                                              3-12-10
> Attorney at Law
>
>       Hello John. Ive been sitting around thinking about events that
> have taken place and I'm a little upset but what can I do!?  I'm stuck
> between a rock and a hard place and now I'm basically at your mercy

---

[5]Mr. Two Eagle's letter is in script handwriting.  The court finds nothing
of significance in the use of lower case or capital letters as it does not appear
any special emphasis was intended, except where indicated.

8

because I'm back to square one before me and my wife decided to find a lawyer that could help me.

I'm aware that your knowledge of the appeal process is beyond most attorneys so I have to put my trust in you and your tactics. Now that we got shot out of the water in Rapid City by a judge who does not care about anything I'm wondering if we go directly into federal now!!?

* I knew I could not file another habeas corpus because I know Davis denied all my attempts and toward's the end he denied most of it with <u>prejudice</u> But you said that we should cover all our avenues before we proceed into federal because it would hurt if we got all that way only to be told we didn't exhaust all our appeal's.  Sounds Good. I know that most courts do want you to exhaust all your appeal's but what about Judge Davis and his belief that I cannot appeal through habeas corpus the denial of psychiatric treatment !!!!  In the law book it clearly states that you could appeal through habeas if you are denied medical treatment.

* I attempted this on my first attempt on a habeas corpus. That basically was denied but on Judge Davise's ruling and memorandum that I did not grievance the issue properly.  Than I did it 3 more times and here is my "<u>fourth</u>" time that I am attempting to grievance the issue properly.  (See attachment's)[6]

* John, you are the expert and I am hoping that you can take charge of this situation and filed what you see as appealable issue's not what I see as appealable.  Ive noticed that in this appeal you put all the stuff I seen and even typed them like I put down.  I only sent you issue's that I wanted you to look at and based on your expert knowledge tell me what you thought and if you seen it put it on paper in your own style.  Which would look and sound better than what I sent you

<u>Please</u>, let me know your thought's.  I call but because I am unable to push a button to get your office my call's are denied.  I'm waiting for you and I hope your doing good and I also hope your situation out east wasn't as bad as they said, my prayers are with you.

Sincerely

---

[6]No attachments are included in the record.

P.S.  I have been told that I will be seen by a Dr. (psychiatrist) but I've been pushed aside <u>four times</u> and just recently I stopped taking my psych-medication (effoxor).  It's been about nine days since and I've having severe panic attack.  I'm hearing voices daily.  Im not sleeping and still this place could care less.  It sucks when your ill and Indian.  Im not a raciest but a kid told me he seen the same Dr. 3 times since being here (with 2 months) I have only seen him once in Oct. 09.  Since than I have requested, grievanced, kited, everything but committed suicide or died from a serious heart attack.  I'm on 3 high blood pressure med's and now I'm debating to stop those also.  (<u>it's crazy</u>)

(Docket 28-2 at pp. 10-12) (underlining in original).

On March 18, 2010, Justin Elkins of the Division of Mental Health, South Dakota Department of Human Services,[7] made the following comments about his contact with Mr. Two Eagle:

Lynn noted that he was frustrated by the fact that he has not been able to see the psychiatrist yet.  He said that he has not been taking one of his medications for the last few weeks or so, and admitted that it was having a negative effect on him.  He said that he has been wound up and tense over the last few days.  He inquired about getting his med ASAP, rather than waiting until the morning.  Staff at HS were notified of this.  They noted that they would have to follow orders unless told otherwise by a physician.  Lynn seemed upset at first, but said that he would surely be taking the morning dose.

Lynn was talkative, and presented as tense and agitated.  He did not present outside his baseline range regarding speech and behavior.  His thoughts seemed logical and connected.  He self-reported that he was not doing well, but noted that it was likely due to his decision to skip his medication.  No SI/HI[8] was evident at this time.  He will continue to kite on an as needed basis.

---

[7]All of Mr. Elkins' contact with Mr. Two Eagle occurred at Jameson Hall on the grounds of the South Dakota State Penitentiary in Sioux Falls, South Dakota.

[8]Common abbreviations for Suicide Ideation/Homicidal Ideation.

(Docket 28-2 at p. 4).  Mr. Elkins' counseling notes of March 20, 2010, reflect

the following:

> Lynn stopped by to inquire about his upcoming psychiatric appointment, but also to let the therapist know about his progress with the anger management material.  He gave several specific examples of how he is applying the material to his life.  He was interested in setting up an appointment in the near future, and was told that it may be possible to discuss his progress further at the end of this week.  He seemed much more positive and upbeat than he has in the past, and appeared eager to talk about all that he has been working on.  There will be more opportunity for assessment during his upcoming individual session.

Id. at p. 5.  On April 1, 2010, Mr. Elkins wrote:

> Time was spent today working with Lynn on his anger management workbook, but also on various other topics such as his plans for parole.  He has shown a marked increase in positivity and insight lately.  This has been evident in the way he is applying the information that he is learning in the anger workbook.  He currently realizes how big of an impact that his thoughts can have on his daily attitude.  For example, he noted that usually the fact that he was called out of his cell early in the morning would have ruined the rest of his day.  But this morning, he analyzed his thoughts before he let them affect him.  He reframed the situation, and thereby avoided negativity for the rest of the day.

> Lynn was talkative, positive, polite and cooperative during the session.  He seems to be fully embracing personal responsibility for his attitude and actions.  He has put a lot of effort into his homework assignments, and seems hungry for more.  He asked for some time next week to continue our discussion.  There were no signs or symptoms of distress, and SI/HI was absent.

Id. at p. 6.

On April 8, 2010, the day after the deadline for filing a motion with the South Dakota Supreme Court seeking issuance of a certificate of probable cause, Mr. Elkins' comments were:

> Lynn is continuing to show extra effort in his work on anger management. Most recently, he completed a section on the cyclic nature of anger. His next task will be becoming more familiar with the cognitive restructuring aspect of managing related feelings. Overall, he appears to be making a lot of progress.
>
> One illustration of his progress is his reaction to missing out on his scheduled psychiatric appointment this week. He was looking forward to this appointment for a long time, mainly because it has already been re-scheduled several times. Before getting angry about not being seen, he realized that it wouldn't make the situation any better for him. He simply asked to be rescheduled at the next available opportunity.
>
> Lynn was positive and talkative this afternoon. He is continuing to show effort, especially from a cognitive standpoint. He is currently going through a divorce, which has saddened him some, although so far he seems to be handling things well. His thoughts were logical and connected, and his speech was normal. He has not demonstrated any signs of aggression in recent memory, although he admits to occasional thoughts that he diffuses. He will be seen again in order to continue monitoring his progress.

Id. at p. 7.

Mr. Two Eagle was seen by a psychiatrist associated with the South Dakota Department of Corrections, Dr. Christopher Davidson, on April 13, 2010. See Docket 28-2 at pp. 8-9. Nothing in Dr. Davidson's psychiatric progress note provides a different or clearer insight into Mr. Two Eagle's mental competency during the critical time period ending on April 7, 2010.

12

Attorney Murphy's affidavit, while confirming Mr. Two Eagle's discontinuation of medications, only generally describes concern about his client's "difficulty expressing his desires in regard to this litigation." (Docket 28-1 at p. 8). The affidavit does not mention Mr. Two Eagle's expression of legal strategies or his instructions to counsel in his letter of March 12, 2010. Mr. Two Eagle's letter displayed a clear, comprehensive layman's understanding of the rules of habeas corpus and the state habeas court exhaustion requirement. See Docket 28-2 at pp. 10-12. Whether he used the correct words "please file a motion with the South Dakota Supreme Court . . . to avoid an exhaustion claim," is not significant, because Mr. Two Eagle reiterated what his attorney told him before: "you said that we should cover all our avenues before we proceed into federal because it would hurt if we got all that way only to be told we didn't exhaust all our appeal's. Sounds Good. I know that most courts do want you to exhaust all your appeal's . . . ." (Docket 28-2 at p. 10).

Mr. Two Eagle's mental health had not interfered with his previous *pro se* state habeas petitions nor had it interfered with his ability to work with his attorney before the state habeas court. See Ervin v. Delo, 194 F.3d 908, 916 (8th Cir. 1999) (mental health condition "did not hinder [petitioner's] ability to file a pro se postconviction motion. . . . Further, [he] was represented by

13

postconviction counsel and there is no evidence [petitioner] was unable to consult with [counsel].") (internal citation omitted).

From these records the court finds Mr. Two Eagle has not met his burden of making a conclusive showing of his incompetency.  Holt, 191 F.3d at 974; see also Stanley, 941 F.2d at 709 (petitioner's medical records were "too inconclusive to support a finding that Stanley was incompetent at the time he failed to file a timely appeal from the denial of his state court petition for post-conviction relief . . . .").  Mr. Two Eagle has not shown "cause and prejudice" for his procedural default in the state habeas proceeding.

Mr. Two Eagle's objection to the report and recommendation on this basis is denied.

> **2.  A COMPREHENSIVE PSYCHIATRIC EVALUATION WOULD LIKELY ASSIST THE COURT IN DETERMINING WHETHER MR. TWO EAGLE WAS INCOMPETENT DURING THE RELEVANT TIME PERIOD.**

Mr. Two Eagle argues the magistrate judge erred in refusing to allow a comprehensive psychiatric evaluation.  (Docket 35 at p. 3).  He suggests the question before the court is "an extremely complicated psychological question." Id. at pp. 3-4.  Mr. Two Eagle cannot overcome his own words in the letter to counsel of March 12, 2010, or the records of his counsel during the critical time period.

14

Mr. Two Eagle cites no authority which requires or permits the court to ignore the evidence before it in order to reconstruct what is already clear in the record.  There is no question that Mr. Two Eagle suffers from significant mental and physical health conditions.  It is equally clear from his letter and counseling records that Mr. Two Eagle was able to understand the nature of the postconviction proceedings and was able to assist counsel.  See Holt, 191 F.3d at 974; see also Stanley, 941 F.2d at 709.  A forensic psychiatric evaluation cannot change the relevant time-specific records.

Mr. Two Eagle's objection to the report and recommendation on this basis is denied.

### 3.   AN EVIDENTIARY HEARING WOULD GIVE THE COURT A FULLER UNDERSTANDING OF MR. TWO EAGLE'S MENTAL STATE DURING THE RELEVANT TIME PERIOD.

Mr. Two Eagle argues the magistrate judge erred by not allowing an evidentiary hearing.  (Docket 35 at p. 7).  In Holt, the appellate court reversed the district court because there was a lack of evidence of mental competency during the critical time period.  Holt, 191 F.3d at 975 ("we cannot say that [the record] is conclusive proof of cause or prejudice [during the critical time] because the record contains no information about petitioner's condition during the remainder of the post-conviction relief period.").  The record in Mr. Two Eagle's case is significantly different from the materials available in Holt.

15

Mr. Two Eagle knew what was required to avoid an exhaustion claim: "you said that we should cover all our avenues before we proceed into federal because it would hurt if we got all that way only to be told we didn't exhaust all our appeal's.  Sounds Good.  I know that most courts do want you to exhaust all your appeal's . . . ." (Docket 28-2 at p. 10).  His counseling records show this was not a fleeting period of competence.

On March 18, 2010, Mr. Elkins reported Mr. Two Eagle's "thoughts seemed logical and connected." (Docket 28-2 at p. 4).  Two days later, Mr. Two Eagle "seemed much more positive and upbeat than he has in the past, and appeared eager to talk about all that he has been working on." Id. at p. 5.  On April 1, 2010, Mr. Two Eagle was "show[ing] a marked increase in positivity and insight lately. . . .talkative, positive, polite and cooperative during the session.  He seems to be fully embracing personal responsibility for his attitude and actions. . . . There were no signs or symptoms of distress . . . ." Id. at p. 6.

Finally, Mr. Elkins' comments of April 8, 2010, are most telling.  "Overall, [Mr. Two Eagle] appears to be making a lot of progress. . . . Lynn was positive and talkative this afternoon.  He is continuing to show effort, especially from a cognitive standpoint. . . . His thoughts were logical and connected, and his speech was normal.  He has not demonstrated any signs of aggression in recent memory, although he admits to occasional thoughts that he diffuses." Id. at p. 7.

No matter what other witnesses may have to offer, the court would not view that evidence in isolation.  An evidentiary hearing cannot overcome the clarity of the documents in the record.  Mr. Two Eagle spoke clearly and coherently about his options regarding the state habeas appeal.  "[I]t would hurt if we got all that way [into federal court] only to be told we didn't exhaust all our appeal's.  Sounds Good.  I know that most courts do want you to exhaust all your appeal's . . . ." (Docket 28-2 at p. 10).  Mr. Two Eagle knew exhaustion of the state habeas process was required before he could proceed in federal court.  An evidentiary hearing would not change this conclusion.

Mr. Two Eagle's objection to the report and recommendation on this basis is denied.

## CONCLUSION

Based on the court's analysis, it is hereby

ORDERED that Mr. Two Eagle's objections (Docket 35) to the report and recommendation are overruled.

IT IS FURTHER ORDERED that the report and recommendation of Magistrate Judge Veronica L. Duffy (Docket 33) is adopted by the court.

IT IS FURTHER ORDERED that Mr. Two Eagle's motion for a comprehensive psychiatric evaluation (Docket 30) is denied.

IT IS FURTHER ORDERED that Mr. Two Eagle's motion for an evidentiary hearing (Docket 30) is denied.

17

IT IS FURTHER ORDERED that the respondent's motion  (Docket 8) is granted.

IT IS FURTHER ORDERED that Mr. Two Eagle's petition (Docket 1) is dismissed with prejudice.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 2253(c) and Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the court declines to issue a certificate of appealability as Mr. Two Eagle has not made a substantial showing of the denial of a constitutional right.  Mr. Two Eagle may timely seek a certificate of appealability from the United States Court of Appeals for the Eighth Circuit under Fed. R. App. P. 22. See Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

Dated November 28, 2011.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE